Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone: (602) 482-4300
Facsimile:  (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff James Reese*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| James Reese,<br><br>          Plaintiff,<br><br>     v.<br><br>Life Insurance Company of North America,<br><br>          Defendant. | Case No.<br><br>**COMPLAINT** |

   Now comes the Plaintiff James Reese (hereinafter referred to as "Plaintiff"), by and through his attorney, Scott E. Davis, and complaining against the Defendants, he states:

### *Jurisdiction*

   1.   Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. Plaintiff is a resident of Maricopa County, Arizona.

3. Upon information and belief, Apollo Education Group, Inc. (hereinafter referred to as the "Company") sponsored, administered and purchased a group long-term disability insurance policy which was fully insured by Life Insurance Company of North America (hereinafter referred to as "LINA").  The specific LINA group long-term disability policy is known as Group Policy No.: FLK-0980124 (hereinafter referred to as the "LTD Policy").  The Company's purpose in sponsoring, administering and purchasing the Policy was to provide long-term disability insurance for its employees.

4. Upon information and belief, the LTD Policy may have been included in and be part of an employee welfare benefit plan, specifically named the Apollo Group, Inc. Life / AD&D Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits.  At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined in 29 U.S.C. §1002(1).

5. In addition, through a LINA group life insurance policy known as Policy No. FLX-980274 (hereinafter referred to as the "LINA Life Policy"), Plaintiff was afforded life insurance coverage and this Policy contained a feature which waived any premiums due on the Policy if Plaintiff were found to meet the definition of disability in the Policy, as is more specifically pled *infra*.

6. The Company's purpose in sponsoring, administering and purchasing LINA's Life Policy was to provide life insurance benefits and/or other welfare benefits for its employees.  The LINA Life Policy may have also been included in and be part of the Plan.

7. LINA LTD Policy No. FLK-0980124 and LINA Life Policy No. FLX-980274, may at times hereinafter be referred to collectively as the "Policies."

8. Plaintiff's long-term disability claim and claim for life insurance coverage and the waiver of any premiums due on the LINA Life Policy are at times hereinafter collectively referred to as the "claims."

9. Upon information and belief, LINA functioned as the claim administrator of the Plan, the LINA Policies and Plaintiff's claims; however, pursuant to the relevant ERISA regulation, the Company and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in LINA.

10. LINA operated under a conflict of interest in administering and evaluating Plaintiff's claims due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled, as well as the payor of benefits.

11. LINA's conflict existed in that if it found Plaintiff was disabled, it was then financially liable for the payment of his disability benefits and also liable to provide life insurance coverage and to waive any premiums due on the LINA Life Policy which covered Plaintiff.

12. The Company, LINA and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Arizona.

*Venue*

13. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

*Nature of the Complaint*

14. Incident to his employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policies and a "participant" as defined by 29 U.S.C. §1002(7).

1  Plaintiff seeks disability income benefits, life insurance coverage and the waiver of any
2  premiums due on the life insurance coverage from the Plan and the relevant Policies
3  pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other
4  employee benefits he may be entitled to, including but not limited to health insurance
5  coverage, pension/retirement benefits, etc., from any other Company Plan as a result of
6  being found disabled.

7       15.    After working for the Company as a loyal employee, Plaintiff became
8  disabled on or about September 17, 2014 due to serious medical conditions and was unable
9  to work in his designated occupation as a Senior Military Enrollment Representative.

10       16.    Following the onset of his disability, Plaintiff filed a claim for short-term
11  disability benefits which was approved and those benefits have been paid and exhausted.

12       17.    Following the exhaustion of his short-term disability benefits, Plaintiff filed a
13  claim for long-term disability benefits under the relevant LTD Policy which was
14  administered by LINA, meaning it made the decision with regard to whether Plaintiff was
15  disabled.

16       18.    Upon information and belief, the relevant LINA LTD Policy and definition of
17  disability governing Plaintiff's long-term disability claim is as follows:

> You are disabled when LINA determines that:
> - you are unable to perform the material duties of your Regular Occupation; and
> - you have a 20% or more loss in your indexed monthly earnings due to that sickness or injury.
>
> After 24 months of payments, you are disabled when LINA determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience and are unable to earn 60% or more of your indexed monthly earnings due to injury or sickness.

19. Plaintiff also filed a claim for the waiver of any premium due on his life insurance coverage through LINA's Life Policy, which was also administered by LINA. Upon information and belief, the LINA Life Policy and definition of disability governing Plaintiff's waiver of life insurance premium claim is as follows:

> You are "Disabled" when because of injury or sickness you are unable to perform the material duties of your Regular Occupation, or are receiving disability benefits under the Employer's plan, during the initial 12 months of Disability. Thereafter you must be unable to perform all of the material duties of any occupation for which you may reasonably become qualified based on education, training or experience, or are subject to a Rehabilitation plan approved by the insurance company.

20. In support of his claims for long-term disability benefits and a waiver of life insurance premiums, Plaintiff submitted to LINA medical records and questionnaires from his treating physicians which supported his claims for benefits.

21. LINA approved Plaintiff's LTD claim and paid Plaintiff benefits through April 2, 2015, when LINA terminated Plaintiff's benefits without any evidence of medical improvement or any evidence that proved Plaintiff was no longer disabled.

22. Upon information and belief, as part of its review of Plaintiff's claims, LINA obtained a medical records only "paper review" from a physician of its choosing, named William Sniger, M.D.

23. Upon information and belief, Plaintiff alleges Dr. Sniger may be long time medical consultant for LINA and/or the disability insurance industry.  As a result, Plaintiff alleges Dr. Sniger may have an incentive to protect his own consulting relationship with LINA and/or the disability insurance industry by providing medical records only "paper reviews," which selectively review or ignore evidence such as occurred in Plaintiff's claims, in order to provide opinions and report(s) which are favorable to disability insurance companies and that are relied upon to deny claims.

24. In a letter dated April 7, 2015, LINA notified Plaintiff it was terminating his long-term disability claim and benefits beyond April 2, 2015.

25. In a letter dated April 3, 2015, LINA notified Plaintiff that it was denying his claim for the waiver of any premiums due under LINA's Life Policy.

26. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the April 7, 2015 denial and termination of his long-term disability benefits and the April 3, 2015 denial of his LINA Life Policy claim. In support of his appeals, Plaintiff submitted additional medical evidence, including from his medical professionals, which demonstrated that he met any definition of disability set forth in the relevant LINA LTD and LINA Life policies.

27. In a letter dated September 10, 2015, LINA notified Plaintiff that it had denied both his claim for long-term disability benefits as well as his claim for benefits under the LINA Life Policy.

28. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the September 10, 2015 denial of his claims and in support of his appeal, Plaintiff submitted additional medical evidence which demonstrated that he met any definition of disability set forth in the relevant LINA Policies.

29. Upon information and belief, as part of its review of Plaintiff's claims, LINA obtained a medical records only "paper review" from a physician who may have been a LINA employee named Penny Chong, M.D. As a result, Plaintiff alleges Dr. Chong may have an incentive to protect her own employment with LINA by providing medical records only "paper reviews," which selectively review or ignore evidence such as occurred in Plaintiff's claims, in order to provide opinions and report(s) which are favorable to LINA and which supported LINA's denial of Plaintiff's claims.

30. Plaintiff questions the independence, impartiality and credibility of LINA's own employee to fully and fairly review his claim and he believes Dr. Chong's opinions are

-6-

adversarial to his claim in part because of her conflict of interest as a LINA employee. Plaintiff believes LINA's financial conflict of interest as referenced *supra*, is a motivating factor as to why it may have referred Plaintiff's claims to one of its own employees for review.

31. In the alternative, if Dr. Chong is not a LINA employee, Plaintiff alleges Dr. Chong may be long time medical consultant for LINA and/or the disability insurance industry. As a result, Plaintiff alleges Dr. Chong may have an incentive to protect her own consulting relationship with LINA and/or the disability insurance industry by providing medical records only "paper reviews," which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to disability insurance companies and that are relied upon to deny claims.

32. In a letter dated November 10, 2015, LINA notified Plaintiff that it had denied his claim for long-term disability benefits pursuant to the LTD Policy. In the letter, LINA also notified Plaintiff he had exhausted his administrative levels of review and could file a civil action lawsuit in federal court pursuant to ERISA.

33. In that same letter dated November 10, 2015, LINA notified Plaintiff that it had denied his claim for a waiver of the premiums due under the LINA Life Policy. In the letter, LINA also notified Plaintiff he had exhausted his administrative levels of review and could file a civil action lawsuit in federal court pursuant to ERISA.

34. In its denial letter dated November 10, 2015, LINA ignored and failed to address a majority of Plaintiff's medical evidence.

35. LINA entered into a Regulatory Settlement Agreement ("RSA") with the Arizona Department of Insurance on June 11, 2013 (the RSA is attached as Exhibit "A" to this Complaint).

36. The RSA resulted from a multistate examination of LINA's disability claims practices which led to regulatory concerns, a corrective action plan with regulatory

monitoring of LINA by governmental agencies in LINA's evaluation of its disability claims, including similarly situated insureds such as Plaintiff.

37. As part of the RSA, LINA agreed to pay $925,000 in fines to the participating state regulatory agencies.

38. As part of the RSA, LINA agreed to collectively pay 5 different states' regulatory agencies hundreds of thousands of dollars for claims monitoring.

39. The terms of the RSA apply to Plaintiff's claims and the RSA is relevant in this action as it relates to whether LINA complied with the terms of the RSA.

40. LINA's review of Plaintiff's claims failed to fully comply with the terms of the RSA and Plaintiff is entitled to discovery with regard to LINA's efforts to comply with and fulfill the terms of the RSA.

41. In evaluating Plaintiff's claims on appeal, LINA had an obligation pursuant to ERISA to administer Plaintiff's claims "solely in [his] best interests and other participants" which it failed to do. [1]

42. In denying Plaintiff's claims, LINA failed to adequately investigate them and failed to engage Plaintiff in a dialogue during the appeal of his claims with regard to what evidence was necessary so Plaintiff could perfect his appeal and claims. LINA's failure to investigate the claims and to engage in this dialogue or to obtain the evidence it believed

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

1 was important to perfect Plaintiff's claims is a violation of ERISA, Ninth Circuit case law
2 and the RSA, and a reason he did not receive a full and fair review.

3     43.    Plaintiff believes LINA provided an unlawful review that was neither full nor fair and that violated ERISA, specifically 29 U.S.C. § 2560.503-1, and the RSA, for numerous reasons, including but not limited to: failing to credit Plaintiff's reliable evidence; failing to adequately investigate his claims; providing one sided reviews of Plaintiff's claims that failed to consider all evidence submitted by him and/or de-emphasizing medical evidence which supported Plaintiff's claims; disregarding Plaintiff's self-reported symptoms; failing to consider all the diagnoses and/or limitations set forth in his medical evidence as well as the impact the combination of those diagnoses and impairments would have on his ability to work; failing to prove that his medical condition had improved to an extent that he no longer met the definition of disability in the Policies; failing to engage Plaintiff in a dialogue so he could submit the necessary evidence to perfect his claims and failing to consider the impact the side effects from Plaintiff's medications would have on his ability to engage in his regular occupation as a Senior Military Enrollment Representative with the Company.

    44.    Plaintiff believes a reason LINA provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to the dual roles LINA undertook as decision maker and payor of benefits which created an inherent conflict of interest and provided a financial incentive for it to deny his claims.

    45.    Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of LINA and any individual who reviewed his claims and the Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of *any*

1 conflict of interest and any ERISA procedural violation and/or RSA violation which may
2 have impacted or influenced LINA's decision to deny his claims.

3       46. With regard to whether Plaintiff meets the definition of disability set forth in
4 the Policies, the Court should review the evidence in Plaintiff's claims *de novo*, because
5 even if the Court concludes the Policies confer discretion, the unlawful violations of ERISA
6 and the RSA committed by LINA as referenced herein are so flagrant they justify *de novo*
7 review.

8       47. As a direct result of LINA's decision to deny Plaintiff's claims, he has been
9 injured and suffered damages in the form of lost long-term disability benefits and lost life
10 insurance coverage and as well as the waiver of any premiums due on the Life Policy, in
11 addition to other potential employee benefits he may have been entitled to receive through
12 or from the Plan, from any other Company Plan and/or the Company as a result of being
13 found disabled.  Plaintiff believes other potential employee benefits may include but not be
14 limited to, health and other insurance related coverage or benefits, retirement benefits
15 (credits) and/or or a pension.

16       48. As referenced, Plaintiff became disabled and was unable to work in his
17 occupation with the Company, or in any occupation, on September 17, 2014 and then
18 returned to work in his occupation with the Company on January 19, 2016.   Plaintiff has
19 been able to work in his occupation with the Company through the present date.

20       49. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits,
21 prejudgment interest, reasonable attorney's fees and costs from Defendant.

22       50. Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S.
23 §20-462, or at such other rate as is appropriate to compensate him for losses he incurred
24 as a result of Defendant's nonpayment of benefits.

25
26

WHEREFORE, Plaintiff prays for judgment as follows:

A.  For an Order requiring the Defendant to pay Plaintiff his long-term disability benefits and life insurance benefits which may be due or are past due and any other employee benefits he may be entitled to, as a result of being found disabled as those terms are defined in the LINA Policies for the period of time he was disabled, with prejudgment interest thereon;

B.  For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such time as he meets the conditions for the termination of benefits;

C.  For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D.  For such other and further relief as the Court deems just and proper.

DATED this 13th day of September, 2016.

SCOTT E. DAVIS, P.C.

By:   */s/ Scott E. Davis*
      Scott E. Davis
      Attorney for Plaintiff